# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SIDDEEQ BASIL HENRY,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)　Civil Action No. 16-167ERIE
　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　Magistrate Judge Susan Paradise Baxter
CO#2 GILARA, *et al.*,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　Defendants　　　　　　　　　　)

## MEMORANDUM OPINION[1]

I. **Background**

　　A. **Introduction**

Plaintiff Siddeeq Basil Henry ("Henry") brings this prisoner civil rights action against CO#2 Gilara ("Gilara"), CO#1 Mohney ("Mohney"), Unit Manager Blicha ("Blicha"), Major Ireland ("Ireland"), and Superintendent Overmyer ("Overmyer") (collectively "Defendants").

In his amended complaint, Henry contends Gilara violated his Eighth Amendment right to be free from cruel and unusual punishment by contaminating his dinner tray four consecutive days. (Docket No. 20 ¶ 61). Henry alleges that after he complained about Gilara's conduct, Gilara retaliated against him with sexually themed insults, conduct that he alleges violates his First and Eighth Amendment rights. (Id. ¶¶ 63–64, 66). Furthermore, Plaintiff alleges that Mohney and Blicha conspired with Gilara to contaminate his dinner trays. (Id. ¶¶ 62, 65). Allegedly, Ireland violated the Prison Rape Elimination Act ("PREA"), (id. ¶ 67), while Overmyer ignored "Plaintiff[']s constant call for help when he had personal knowledge of all

---

[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. *See* 28 U.S.C. § 636 *et seq.* (ECF Nos. 24, 25 and 26).

incidents," making him liable as a supervisor. (Id. ¶ 68). Plaintiff seeks to enforce his constitutional rights through 28 U.S.C. § 1983.

Defendants move for dismissal on several grounds.[2] Defendants Gilara and Mohney argue that Henry did not state a cognizable Eighth Amendment claim for contaminated food because he did not allege the food injured him. (Docket No. 22 at 5–6). Henry's conspiracy claim should fail as a matter of law because he did not state an adequate underlying Eighth Amendment violation by Gilara and made only bald, conclusory allegations that Mohney and Blicha entered into a conspiracy with Henry. (Id. at 7–8; Docket No. 32 at 6). Henry's retaliation claim against Gilara is insufficient because it lacks specificity. (Docket No. 22 at 8–9). Ireland argues that the claim against her should be dismissed because the PREA contains no private right of action and Overmyer defends against Henry's supervisory liability claim by pointing out that he cannot be liable on a *respondeat superior* basis. (Docket No. 32 at 4, 7–8).

After considering Henry's amended complaint (Docket No. 20), Defendants' briefs in support of their motions to dismiss (Docket Nos. 22, 32), and Henry's briefs opposing Defendants' motions to dismiss (Docket Nos. 26, 36), the Court will grant Defendants' Rule 12(b)(6) motions to dismiss (Docket Nos. 21, 31) and will dismiss all of Henry's claims against Defendants with prejudice. In addition, Gilara's and Mohney's Rule 12(b)(6) motion to dismiss (Docket No. 12) Henry's original complaint (Docket No. 4) will be denied as moot.

B. **Plaintiff's Allegations**

On February 26, 2016, prison officials at SCI Forest placed Henry in K-Block, a restrictive housing unit ("RHU"), because he allegedly assaulted two corrections officers.

---

[2] Although all Defendants are represented by the Office of the Attorney General, there are two separate motions to dismiss pending; the first was filed on behalf of Gilara and Mohney [Docket No. 21] and the second on behalf of Blicha, Ireland and Overmeyer [Docket No. 31].

(Docket No. 20 ¶ 10). The next day, Plaintiff claims Gilara personally served him a dinner tray, laughing and telling him to "enjoy my special sauce bitch," which sauce was a "brownish liquid that smelled like chewing tobacco." (Id. ¶¶ 12–14). A similar incident is alleged to have occurred on February 28, 2016, when Gilara separately served Henry's dinner tray with a "brownish liquid that smelled like chewing tobacco, balls of hair and dirt" in his food, remarking "that's from my buddy you punched." (Id. ¶¶ 15–17). The following day, February 29, 2016, Plaintiff claims Mohney served the other RHU inmates, but passed Henry, explaining "Gilara has your special tray." (Id. ¶¶ 18–20). Gilara later brought a tray to Henry from outside the RHU and allegedly repeated his "special sauce" remark from two days before. (Id. ¶¶ 21–22). Plaintiff claims the tray again contained "a brownish liquid that smelled like chewing tobacco." (Id. ¶ 23). Finally, Gilara allegedly remarked to "let [him] know if [his dinner] tastes funny" after personally serving Plaintiff's tray on March 1, 2016. (Id. ¶¶ 24–26). This time Henry claims the tray contained the brown liquid that tasted like chewing tobacco as well as a "thick yellowish green glob of mucus." (Id. ¶ 27). Henry alleges that he was unable to properly consume his dinner from February 27, 2016, through March 1, 2016. (Id. ¶¶ 12, 15, 18, 24, 28).

Plaintiff also claims that Gilara's improper interactions with him extended beyond food trays. Henry claims that Gilara called him a "big faggot" and insinuated that Henry was kicked out of his last jail because Henry fought his lover (id. ¶ 31), that Gilara told Henry that "me and my buddies will ejaculate into a cup so you could drink it, (id. ¶ 32)" asked Henry if he ever allowed a horse to anally penetrate him or if he ever orally copulated with a dog (id.), and told his coworkers that Henry has AIDS because Henry is homosexual. (Id. ¶ 33). In response, Henry filed a complaint under the Prison Rape Elimination Act ("PREA") with the Pennsylvania State Police. (Id. ¶ 34).

In addition, Henry filled out a Form DC-135A (inmate request to staff member) and sent it to SCI Forest Superintendent Overmyer requesting that he be moved from the RHU to another housing block, J-Unit, listing the dates and times he received allegedly contaminated food. (Docket No. 20-1 at 1). Plaintiff alleges Gilara continued verbally harassing him even after he entered J-Unit, by saying on June 13, 2016, "you know you are gay, so don't act cool in front of these guys" as well as "you know you like it rough." (Id. ¶¶ 35–36). Henry filed another PREA complaint against Gilara with PREA Coordinator Ireland, but Ireland did not investigate Henry's PREA complaint. (Id. ¶¶ 37, 38). Four days later, while Blicha visited, Henry claims he asked him why he did not prevent Henry's food trays from being contaminated in the RHU. (Id. ¶ 40). Blicha allegedly asked "how did his spit taste" and added "you are lucky that's all you got after you assaulted staff." (Id. ¶¶ 41, 43).

## II. Standards of Review

### A. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or a litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 647 (7th Cir. 1992); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint

in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307, 311 (3d Cir. 2001). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Henry is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

B.     **Rule 12(b)(6)**

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Emps'. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also McTernan v. City of York, Pa., 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556 (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004)). Although the United States

5

Supreme Court does "not require heightened pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, No. 07-528, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556 n.3).

The Third Circuit has expounded on the Twombly/Iqbal line of cases. To determine the sufficiency of a complaint under Twombly and Iqbal, courts must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 53 (D. Del. 2002) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). Indeed, the Supreme Court has held that a complaint is properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, or when the factual content does not allow the court "to

6

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The question is not whether the plaintiff will prevail in the end. Rather, the question "is whether the plaintiff is entitled to offer evidence in support of his or her claims." Swope v. City of Pittsburgh, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) (citing Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 187 (3d Cir. 2003)).

### III. Discussion

#### A. PREA Claims

Plaintiff cannot use § 1983 as a vehicle to raise a claim for which there is no private right of action. See Gonzaga Univ. v. Doe, 536 U.S. 273 (2002). The Prison Rape Elimination Act "does not provide a private right of action." Bowens v. Emps. of the Dep't of Corr., 2015 WL 803101, at *1 n.1 (E.D. Pa. Feb. 26, 2015); Washington v. Folino, 2013 WL 998013, at *4 (W.D. Pa. Feb. 28, 2013) (holding that violations of the Prison Rape Elimination Act do not create a private cause of action); Nestor v. Dir. of NE. Region Bureau of Prisons, 2012 WL 6691791, at *3 (D.N.J. Dec. 20, 2012) ("Plaintiff may not assert a private claim under the PREA."). Henry's attempted PREA claims against Ireland and Gilara (referring to violation of 42 U.S.C. § 15602(1)) fail as a matter of law. (Docket No. 20 ¶¶ 64, 67). Therefore, they will be dismissed with prejudice.

#### B. Retaliation Claim

To state a retaliation claim, Henry must allege that: (1) the conduct that led to the supposed retaliation was constitutionally protected; (2) the prisoner endured an adverse action from prison officials; and (3) the prisoner's constitutionally protected conduct was a substantial or motivating factor in his discipline. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

7

Assuming arguendo that Henry satisfies elements one and three, at issue is whether he endured an adverse action. An adverse action must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

Here, the conduct Henry claims is retaliatory does not constitute an adverse action as a matter of law. Although Gilara's alleged conduct is far from professional, it does not constitute the requisite adverse action in order to state a *prima facie* claim of retaliation. The Third Circuit has repeatedly held that verbal threats alone do not constitute adverse action for the purposes of establishing a *prima facie* retaliation claim. Chruby v. Kowaleski, 534 Fed. Appx 156, 161 (3d Cir. 2013); Dunbar v. Barone, 487 Fed. App'x 721, 723 (3d Cir. 2012) (affirming summary judgment for Defendants where Defendants allegedly threatened Plaintiff by telling him that he was a "marked man" and that his "days were numbered"); Burgos v. Canino, 358 Fed. App'x 302, 306 (3d Cir. 2009) ("Mere threats do not constitute retaliation."); Booth v. King, 228 Fed. App'x 167 (3d Cir. 2007) ("Absent any allegation of physical harm, the defendants' verbal threats do not amount to a constitutional violation."). Thus, Henry has not alleged that he endured any adverse actions and the Court will dismiss his First Amendment retaliation claim against Gilara with prejudice.

### C. Eighth Amendment Claims

*1. Sexual Insults*

Henry is unable to state an Eighth Amendment claim against Gilara based on his sexual insults. "Verbal harassment does not give rise to a constitutional violation enforceable under § 1983." Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993). "It is well-settled that the use of words, no matter how violent, is not actionable under § 1983." Moore

v. Adams, 2013 WL 3972447, at *6 (W.D. Pa. July 30, 2013); see also Jacobs v. Bayha, 2010 WL 3895768 (W.D. Pa. Sept. 30, 2010) (listing cases). Gilara directed numerous unprofessional, sex-laced remarks toward Henry, but such verbal harassment does not give rise to a violation under the Eighth Amendment or any constitutional provision. Henry's attempt to state an Eighth Amendment claim on the basis of Gilara's verbal harassment will be dismissed with prejudice.

### 2. *Contaminated or Inadequate Food*

To show a prison official violated a prisoner's Eighth Amendment rights, the prisoner must show that (1) the "official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities'" and (2) the official is deliberately indifferent[3] "to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Prison officials must provide "adequate food, clothing, shelter, and medical care" to inmates. Id. at 832. "To demonstrate a deprivation of his basic human needs, a plaintiff must show a sufficiently serious objective deprivation." Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000).

Henry alleges that he was unable to properly consume his dinner from February 27, 2016, through March 1, 2016. (Docket No. 20 ¶¶ 12, 15, 18, 24, 28). On February 27, 2016, he claims that Gilara personally served him a dinner tray with a "brownish liquid that smelled like chewing tobacco." (Id. ¶ 14). A similar incident occurred on February 28, 2016, February 29, 2016, and March 1, 2016 (Id. ¶¶ 23–27). Plaintiff claims that Defendant Gilara's actions "deprived Plaintiff of a basic human need by contaminating the food trays four straight days with malicious intent to

---

[3] To establish deliberate indifference: "(1) a prison official must know of and disregard an excessive risk to inmate health or safety; (2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists[;] and (3) the official must also draw the inference." Brown v. Overmyer, 2017 WL 487119, at *3 (W.D. Pa. Jan. 13, 2017) (citing Farmer, 511 U.S. at 837).

9

cause harm/emotional distress. Defendant Gilara's actions violation [sic] Plaintiff's rights under the Eighth Amendment to the U.S. Constitution, and caused Plaintiff pain, suffering, and emotional distress." (Docket 20, ¶ 61).

An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes, 452 U.S. at 347; see also Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) (holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). However, in order for conditions of confinement to be considered cruel and unusual under the Eighth Amendment, the deprivation of "the minimal civilized measure of life's necessities" must be "widespread." See McCluskey v. Vincent, 505 Fed.App'x 199, 204 (3d Cir. 2012) (internal citations omitted). Only extreme deprivations are sufficient to establish an Eighth Amendment violation. See Dockery v. Beard, 509 Fed.App'x 107, 112 (3d Cir. 2013) (citing Farmer, 511 U.S. at 834); Rhodes, 452 U.S. at 347; Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim).

Here, Plaintiff has alleged only four instances of being served contaminated food. Even assuming Plaintiff's allegations are correct, these instances of food contamination falls far short of the level of deprivation required to establishing an Eighth Amendment violation. Henry's allegations do not constitute a substantial deprivation as a matter of law. "[O]nly a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim." Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009). "[T]he Eighth Amendment's prohibition against cruel and unusual punishment is implicated" when prison officials systematically "den[y] a series of meals to an inmate over a span of weeks." Rodriguez v. Wetzel, 2015 WL 1033842 at

*11 (3d Cir. 2015). Henry averred that Gilara purposefully contaminated his dinner tray on four consecutive days. (Docket No. 20 ¶¶ 12, 15, 18, 24, 28). Henry did not accuse the Defendants, in his amended complaint, of denying him "a series of meals . . . over a span of weeks" or even totally depriving him of food over a four-day period. Rodriguez, 2015 WL 1033842 at *11. As a result, Henry's allegations in this regard are insufficient to state an Eighth Amendment claim as a matter of law and will be dismissed with prejudice.

### 3. *Civil Conspiracy to Contaminate Food*[4]

A civil conspiracy claim under section 1983 requires a plaintiff to allege "(1) an agreement of two or more conspirators (2) to deprive the plaintiffs of a constitutional right[] (3) under color of state law." Glass v. City of Phila., 455 F. Supp. 2d 302, 357 (E.D. Pa. 2006) (citing Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)). "[A] cause of action for civil conspiracy requires a distinct underlying tort as a predicate to liability." In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999). Because Henry has not stated a legally cognizable Eighth Amendment claim for food contamination or deprivation, his civil conspiracy claim against Mohney and Blicha will be dismissed with prejudice.

---

[4] Henry's amended complaint alleged that Mohney and Blicha violated 42 U.S.C. §§ 1985 and 1986 by illegally conspiring with Gilara to contaminate Henry's food. (Docket No. 20 ¶¶ 62–63, 65). The Court construes this averment as a civil conspiracy claim under 42 U.S.C. § 1983 because 42 U.S.C. §§ 1985 and 1986 are inapplicable as a matter of law. See infra Part III.D. Plaintiff also contended that Ireland violated 42 U.S.C. §§ 1985 and 1986 "by downplaying Plaintiff[']s PREA complaint." (Docket No. 20 ¶ 67). Again, 42 U.S.C. §§ 1985 and 1986 are inapposite to Henry's claims. See infra Part III.D.

11

*4. Supervisory Liability Claim Against Overmyer*

Henry's supervisory liability claim against Overmyer does not survive Defendants' motion to dismiss because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Because Henry failed to allege Overmyer's personal involvement, the claim against him will be dismissed with prejudice.

**D.     Section 1985 and 1986 Claims**

Henry's sections 1985 and 1986 claims against Gilara, Mohney, and Ireland fail as a matter of law because they are inapplicable to Henry's factual allegations.  Although Henry does not specify the subsection of Section 1985 under which he is proceeding, subsection three is the best fit.[5]

To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)).  This provision "does not create any substantive rights, but permits individuals to enforce substantive rights against conspiring private parties." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).  "[A] plaintiff must allege both that

---

[5] 42 U.S.C. § 1985(3) provides:  "If two or more persons in any State or Territory conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages . . . against any one or more of the conspirators."

the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." Id. at 135. A § 1985(3) claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102. Defendants in § 1985(3) claims "must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct." Farber, 440 F.3d at 136. Henry does not allege in his amended complaint that private parties conspired to discriminate against him or that he was discriminated against because he was a member of a class. Accordingly, his § 1985 claims will be dismissed with prejudice.

Henry also fails to state § 1986 claims as a matter of law. Section 1986 provides that: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured." 42 U.S.C. § 1986. "[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985." Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981). Since Henry has not stated a § 1985 claim, his § 1986 claim fails and will be dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, Defendants' Rule 12(b)(6) motions to dismiss (Docket Nos. 21, 31) will be granted with prejudice as to all of Henry's claims. Gilara's and Mohney's prior Rule 12(b)(6) motion (Docket No. 12) in response to Henry's original complaint (Docket No. 4) will be denied as it is moot. Plaintiff will not be permitted leave to amend his complaint

as any amendment would be futile. See In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1332 (3d Cir. 2002).

An appropriate order will follow.

> s/Susan Paradise Baxter
> SUSAN PARADISE BAXTER
> United States Magistrate Judge

Dated: August 9, 2017